UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    v.<br><br>ALEXIS PEGUERO,<br>    a/k/a, "King Lexi,"<br>    a/k/a, "King Looney,"<br><br>        Defendant | Criminal No. 19-CR-10459-RWZ |

**MEMORANDUM IN SUPPORT OF SENTENCING RECOMMENDATION**

The government submits the instant memorandum in support of its recommendation for 27 months of incarceration for the defendant, Alexis Peguero a/k/a "King Lexi" a/k/a, "King Looney." This recommendation reflects the seriousness of the offense as well as the defendant's leadership position with the Latin Kings criminal enterprise, and is sufficient but no greater than necessary to accomplish the goals of sentencing.

**THE ADVISORY SENTENCING GUIDELINES**

The parties agree that U.S. Probation has properly calculated the guidelines in the final Presentence Report. The defendant's base offense level of 19 (pursuant to USSG §2E1.1(a)) is reduced by three levels due to his prompt acceptance of responsibility, for a total offense level of 16. With a criminal history score of I, the guideline sentencing range is 21-27 months.

**ARGUMENT**

The Court recently sentenced the defendant's twin brother, Wilson Peguero, a/k/a "King Dubb," to a period of 30 months' imprisonment. *See* Dkt. 1532. Given the similarities between these men, and the need to avoid unwarranted sentencing disparities, Wilson Peguero's sentence provides a useful benchmark as the Court considers the appropriate sentence for this defendant.

Contrary to defendant's suggestion in his memorandum, he was more than a "mere gang member[]." Dkt. 1537 at 6. Both Peguero brothers held senior leadership positions over the Devon Street Kings, or "D5K," chapter of the Latin Kings. Wilson Peguero served as the top-ranking "Inca" of the chapter, while this defendant served as his second-in-command, in the role of Cacique. As Cacique, the defendant worked with his brother to organize more than ten individual members, oversaw their activities and their promotion within the criminal organization, recruited new members, implemented discipline within the ranks as necessary, and participated in meetings where chapter-wide issues were addressed. Notwithstanding his position, Probation has determined that the defendant is not subject to any leadership enhancement. The government does not object to this determination, but submits that the Court should still consider the defendant's aggravating role in crafting an appropriate sentence at the high end of the uncontested guideline range.

The defendant and his brother attended key meetings of state leadership, including the March 23, 2019 trial of Angel Roldan, and the August 31, 2019 meeting during which members of the State leadership team discussed the resulting termination order against Roldan. Throughout the investigation, the Defendant was captured on numerous recordings discussing the business of the Latin Kings enterprise and the criminal activity being committed by the members of the gang, including violent retaliation and distribution of controlled substances.

The defendant also worked with his brother to further the gang's goals of targeting suspected cooperators. In December 2018, Wilson Peguero told other members of the chapter that he had seen paperwork confirming that Victim 5—an incarcerated individual—had cooperated with law enforcement. On December 20, 2018, Wilson Peguero spoke to Angel Rodriguez, who was also incarcerated. Wilson confirmed that he had seen the paperwork confirming Victim 5's

2

cooperation but, because he did not want to talk about theirs plans over the recorded jail line, would send the defendant to see Rodriguez in person. Jail records confirmed that the defendant in fact visited Rodriguez three days later, on December 23, 2018, presumably to talk to Rodriguez about their belief that Victim 5 was a cooperator. Before any members could take action against Victim 5, investigators moved Victim 5 to a protected location within the DOC.

Like his brother, the defendant also played a critical role in the creation, production, and dissemination of Latin Kings propaganda in the form of rap videos. The defendant used his self-proclaimed music talents to glorify the Latin Kings lifestyle, brag about his membership by flashing gang signs and firearms, and threaten rival gang members. *See e.g.* Ex. A. In his allocution statement, the defendant continues to claim that such videos were purely for entertainment purposes. Dkt. 1537-1 at 7. In so claiming, he fails to take responsibility for the destructive impact his videos had on his community, and ignores the reality that such videos serve as persuasive marketing to young, troubled men (including young men like his twin, who admitted to being enticed to join the Latin Kings himself after seeing similar music videos lionizing the gang lifestyle). These factors may be considered by the Court when evaluating the defendant's likelihood of reoffending and the need to provide specific deterrence.

While the defendant has only one scoreable conviction, his overall criminal history provides a glimpse into the types of violent and drug distribution activities the defendant has been involved in.[1]  *See* PSR ¶¶ 74, 75, 80-90.

---

[1] It is worth noting that he was arrested with his twin, Wilson Peguero, for the case discussed in paragraph 74 of the PSR. For whatever reason, Wilson Peguero was charged with assault and battery with a dangerous weapon (to wit a hard cardboard box)—which resulted in a scoreable point and a higher criminal history category—while this defendant was charged only with disorderly conduct and trespassing (non-scoreable offenses under USSG §4A1.2(c)), even though he was arrested carrying a large steak knife, and repeatedly kicked and punched police officers during his booking process.

The nature and circumstances of this defendant's leadership and participation in the racketeering enterprise, as well as his personal history and characteristics, justify a sentence of 27 months. A sentence of this length adequately reflects the seriousness of the offense and also his aggravating role in the organization, while avoiding unwarranted disparity in sentencing.  This sentence also serves the purposes of promoting respect for the law and providing just—but not excessive—punishment for the harm the defendant caused to the community through his enterprise activities.   On consideration of all these factors, 27 months is a fair and just sentence.

## CONCLUSION

The Court should impose a sentence of 27 months of incarceration.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:

*/s/ Lauren A. Graber*
PHILIP A. MALLARD
LAUREN A. GRABER
Assistant U.S. Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston MA 02210
617-748-3309

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Lauren A. Graber*
LAUREN A. GRABER
Date:  December 11, 2020                              Assistant U.S. Attorney

**Exhibit A**

*Stills and Lyrics from "Inferno"*[2]



"Look forgive me, I know I'm a sinner. But how could I stop if I feel like a winner."
"Clearing the block…you can't run from all these shots."



"I love getting bread with my brothers, 'cause when we was down all we had was each other.  If you sneak on the game, we gonna meet one another.  Especially if you beef with my brothers, 'cause this will get deep for my brothers.  We play the streets when it's real.  If it's a mission, it's a kill…..if we gonna shoot it's to kill.

---

[2] Available at https://www.youtube.com/watch?v=p9C8Evrn3H4.

5